IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **BRUCE PETTWAY and EMPLOYER BENEFITS CONSULTING, LLC,** ) ) ) **Plaintiffs,** ) ) **v.** ) ) **ATTORNEY GENERAL STEVE MARSHALL and OTIS PERKINS,** ) ) ) **Defendants.** ) | Case No. 5:19-CV-1073-KOB |

# MEMORANDUM OPINION

Plaintiffs in this case allege that the Defendant violated the Fourth and Eighth Amendments by seizing funds that Plaintiffs earned while serving as a consultant for a pair of bingo operators in Jefferson County, Alabama. Pursuant to Federal Rule of Civil Procedure 12, the Defendant's instant motion to dismiss calls the numbers b(1) and b(6) to the court's attention, arguing that this court lacks subject-matter jurisdiction and that the complaint fails to state a claim upon which relief can be granted. (Doc. 52.) Ultimately, though, because qualified immunity shields the Defendant from suit, the court WILL GRANT the motion to dismiss.

**Background**

The Third Amended Complaint alleges that Plaintiff Bruce Pettway, a business consultant and broker, provided consulting services to Brighton Ventures and Brighton Ventures II (collectively, "Brighton Ventures") in early 2019 in exchange for a one-time payment of approximately $15,500. (Doc. 51 at 3–4). Mr. Pettway then deposited these funds into Plaintiff Employer Benefits Consulting's account at a BBVA Bank branch in Jefferson County, Alabama. The City of Brighton, also located in Jefferson County, issued a license to Brighton Ventures to

conduct bingo games. (*Id.* at 4.) Although EBC is located in Jefferson County and Mr. Pettway's services allegedly took place in Jefferson County, Brighton Ventures is incorporated in Madison County, Alabama.

On June 7, 2019, former Defendant Otis Perkins, a special agent with the Alabama Attorney General's Office, executed an affidavit in Madison County for seizure of several bank accounts suspected of holding funds derived from illegal gambling activity. Specifically, the affidavit stated that Brighton Ventures operated an illegal electronic bingo facility in Jefferson County, and that proceeds from the facility existed in six different accounts—including Plaintiffs' BBVA account. (Doc. 53-2.) The affidavit pointed to Brighton Ventures' $15,500 check to Plaintiffs—issued as "revenue share"—as evidence of illegal profit. (*Id.* at 6.) Based on Agent Perkins's affidavit, the Circuit Court of Madison County, Alabama issued a warrant, which was executed on June 7, 2019 on Plaintiffs' BBVA account. On June 13, 2019, BBVA Bank notified Plaintiffs that the State of Alabama had seized and frozen the account; at the time, the account held about $240,000.

On July 3, 2019, the State of Alabama filed an *in rem* civil forfeiture action in Madison County for the allegedly illegal gambling proceeds in Plaintiffs' BBVA account. (Doc. 54 at 10.) Plaintiffs did not receive notice of the seizure warrant from the State until after Plaintiffs filed the instant suit on July 10, 2019. (Doc. 51 at 6.)

Based on these facts, Plaintiffs' Third Amended Complaint brings two[1] causes of action. First, Plaintiffs allege that by seizing $240,000 from Plaintiffs, Defendant Attorney General

---

[1] The Third Amended Complaint originally included a third cause of action, "unlawful seizure of property." But during the pendency of the instant motion to dismiss, Plaintiffs voluntarily withdrew this claim, along with all claims against Otis Perkins, on November 19, 2019. (Doc. 59.)

Steve Marshall violated the Eighth Amendment's prohibition of excessive fines. Because the supporting affidavit only expressly cited to Brighton Ventures' $15,500 check, the State's seizure of the whole account "was grossly disproportionate to the fine [a maximum of $6,000] which may be imposed for violating the state's gambling law." (Doc. 51 at 9.)

Second, Plaintiffs assert that Attorney General Marshall violated the Fourth Amendment's ban on unreasonable seizures. Similar to Plaintiffs' Eighth Amendment count, Plaintiffs contend that the account freeze was an unreasonable seizure because "the amount seized was totally out of proportion to the maximum criminal fine ($6,000) for violation of the State's gambling laws." (Doc. 51 at 12.)

Based on these alleged constitutional violations, Plaintiffs seek a declaratory judgment that Attorney General Marshall violated Plaintiffs' Fourth and Eighth Amendment rights, a permanent injunction "barring Defendants from engaging in similar conduct against Plaintiffs in the future" (Doc. 51 at 13), compensatory and punitive damages, and attorneys' fees and costs.

Underlying Plaintiffs' two remaining causes of action, Plaintiffs also allege several facts to suggest that Attorney General Marshall had impure motivations in targeting Mr. Pettway. Mr. Pettway, a black man, is the brother of Jefferson County Sheriff Mark Pettway. (Doc. 51 at 6.) Since Sheriff Pettway's investiture in January 2019, Plaintiffs allege that Attorney General Marshall has publicly criticized the new sheriff's apparent apathy about enforcing Alabama's gambling laws. For example, Plaintiffs allege that in April 2019, Attorney General Marshall told a group of students at Auburn University that he would "handle the Sheriff" in response to Sheriff Pettway's supposed failure to enforce Alabama's gambling laws in Jefferson County. (Doc. 51 at 7.) But at the same time, Attorney General "Marshall has allowed an electronic bingo operation to operate in the majority white Houston County, Alabama." (*Id.* at 7.)

3

Mr. Pettway and EBC filed their first complaint in this court on July 10, 2019, along with a motion to enjoin the State from freezing Plaintiffs' BBVA bank account. (Docs. 1 & 2). Plaintiffs amended their complaint three times, on July 19, July 23, and September 25, 2019, by adding Agent Perkins as a Defendant and allegations that Defendants acted in bad faith in violating Plaintiffs' constitutional rights. (Docs. 11, 15, 51).

Attorney General Marshall moved to dismiss the entire case on *Younger* abstention grounds on July 24, 2019; he argued that the court should abstain from exercising jurisdiction over this case because Plaintiffs ask the federal court to intervene in the ongoing state forfeiture proceeding in Madison County. (Doc. 17). The court denied the motion because Plaintiffs presented facially plausible evidence that Defendants acted in bad faith—an allegation that, if true, precludes the *Younger* doctrine. *See Wilson v. Thompson*, 593 F.2d 1375, 1387 (5th Cir. 1979.) Specifically, the court found that "forfeiture of $240,000 for alleged 'gambling proceeds' far below that amount . . . strikes the court as facially suspect." (Doc. 30 at 8.)

After the court denied Attorney General Marshall's motion—and, apparently, after the State investigated the BBVA account for other illegally obtained proceeds—the State unfroze all but $15,500 in Plaintiffs' account. Plaintiffs filed their Third Amended Complaint soon thereafter (Doc. 51), and the court found Plaintiffs' motion to unfreeze the funds to be moot. (Doc. 56.) The civil forfeiture proceeding remains pending before the Madison County Circuit Court regarding the $15,500 that Brighton Ventures paid Plaintiffs.

Defendants filed the instant motion to dismiss on October 8, 2019 (Doc. 54), to which Plaintiffs responded (Doc. 57), and Defendants replied. (Doc. 58.) Pursuant to Defendants' motion, which raised Eleventh Amendment immunity as a defense, Plaintiffs conceded that the Eleventh Amendment prevents claims against Defendants in their official capacities. On

4

November 14, 2019, Plaintiffs filed a voluntary motion to dismiss all claims against Defendants in their official capacities. (Doc. 59.) Because Plaintiffs only sued Agent Perkins in his official capacity (Doc. 51 at 3), no claims remain against Agent Perkins. The court dismissed Agent Perkins from the case on May 28, 2020. (Doc. 60.)

After the dust settled, Plaintiffs' remaining two Counts contend that Attorney General Steve Marshall, pursuant to 42 U.S.C § 1983 and in his individual capacity only, violated Plaintiffs' Eighth Amendment rights (Count I) and Fourth Amendment rights (Count II) by freezing their BBVA account.[2] Attorney General Marshall's motion to dismiss does not attack the facial plausibility or sufficiency of Plaintiffs' Third Amended Complaint; instead, he raises two affirmative defenses—prosecutorial immunity and qualified immunity—and argues once again that the *Younger* abstention doctrine applies. Because, as explained below, Attorney General Marshall is entitled to qualified immunity regarding both of Plaintiffs' claims, the court need not address the prosecutorial immunity and will not revisit the *Younger* abstention arguments.

**Qualified Immunity Analysis**

Qualified immunity protects government officials performing discretionary functions from individual capacity suits *unless* the official violates a "clearly established" statutory or constitutional right "of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). The purpose of qualified immunity is to allow government officials to do their

---

[2] Although Plaintiffs no longer allege any causes of action under state law, Plaintiffs comment as an aside that Attorney General Marshall violated Ala. R. Civ. P. 64(b)(2)(B) because the warrant failed to notify Plaintiffs "of their right to a pre-judgment hearing on the issue of dissolution." (Doc. 51 at 5–6.) To the extent that Plaintiffs assert this argument, the court finds it inapplicable because Plaintiffs have neither explained why the Alabama Rules of Civil Procedure should apply to the State of Alabama's execution of a seizure warrant nor expressly pled such a cause of action.

jobs without specter of personal liability haunting their every move. "When improper motive is part of the underlying constitutional tort—and where evidence exists of mixed motives—a defendant is still entitled to qualified immunity *if* the record indisputably establishes that the defendant in fact was motivated, at least in part, by lawful considerations." *Mitchell v. City of Jacksonville*, 734 F. App'x 649, 651 (11th Cir. 2018) (emphasis added; quoting *Stanley v. City of Dalton*, 219 F.3d 1280, 1296 (11th Cir. 2000)).

Whether a government official is entitled to qualified immunity is a question of law that the court should determine "at the earliest possible stage of a litigation." *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). To receive qualified immunity, the government official bears the initial burden to prove that he was acting within the scope of his discretionary authority. *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002).

If the official can establish that he was acting within his discretionary authority, the plaintiff then shoulders the burden of showing that qualified immunity is not appropriate. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). A two-prong test, performed in either order, determines whether qualified immunity is appropriate. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). One prong requires the court to ask whether, "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (citing *Saucier*, 533 U.S. at 201). The other prong asks whether the right was clearly established at the time of the alleged violation. *Gonzalez*, 325 F.3d at 1234. A right is clearly established when "the law at the time of an incident [provides] 'fair warning' to the defendants that their alleged conduct was unconstitutional." *Salvato v. Miley*, 790 F.3d 1286, 1292 (11th Cir. 2015). Put simply, a plaintiff's claim can survive a motion to dismiss raising

qualified immunity if "the plaintiff's allegations state a claim of violation of clearly established law." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

In this case, Plaintiffs clearly assert that Attorney General Marshall operated within his discretionary role at all relevant times. *See* (Doc. 51 at 6) ("It was the function of Defendant General Marshall in his administrative role to ensure that the Search and Seizure Warrant complied with Alabama's rules for *in rem* proceedings.") *See also* (Doc. 57 at 8) (conceding that Defendants acted within the scope of their discretionary authority.) The burden then shifts to Plaintiffs to show that Attorney General Marshall violated a clearly established constitutional right. *See Lee*, 284 F.3d at 1194. Plaintiffs contend that Attorney General Marshall violated two Constitutional rights: freedom from excessive fines under the Eighth Amendment (Count I) and freedom from unreasonable searches and seizures under the Fourth Amendment (Count II). Plaintiffs' claims fail on both Counts.

Plaintiffs' Count I fails because Plaintiffs incorrectly assume that the freeze of the BBVA account constituted a "fine" under the Eighth Amendment. The Supreme Court directly addressed this issue in *United States v. Bajakajian*, 524 U.S. 321, 328 (1998) and determined that forfeitures are fines *only* "if they constitute punishment for an offense." *Id.* The Court explained that *in rem* actions are not punitive because they proceed against guilty property rather than guilty persons; accordingly, *in rem* forfeitures, even if permanent, are not "fines" within the meaning of the Eighth Amendment. *Id.* at 330–32. *See also Browning-Ferris Indus. v. Kelco Disposal*, 492 U.S. 257, 265 (1989) (explaining that a "fine" is "a payment to a sovereign as punishment for some offense.")

The instant case features neither a payment nor a punishment. The State of Alabama initiated an *in rem* proceeding and temporarily froze Plaintiffs' BBVA bank account while

investigating payments—allegedly derived from illegal gambling activity—that Brighton Ventures made to Plaintiffs. Because the State of Alabama's investigatory and temporary freeze of Plaintiffs' bank account falls outside the purview of the Eighth Amendment's prohibition on excessive fines, Plaintiffs have failed to show that Attorney General Marshall violated a clearly established constitutional right under Count I. The court WILL DISMISS Plaintiffs' Count I on qualified immunity grounds.

Plaintiffs' Count II also fails because Plaintiffs fail to show how Attorney General Marshall's conduct violated Plaintiffs' Fourth Amendment rights. *See Gonzalez v. Reno*, 325 F.3d at 1234. The Fourth Amendment establishes that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Plaintiffs allege that the State's freeze of Plaintiffs' BBVA account was unreasonable under the Fourth Amendment because the freeze (a) physically occurred at a BBVA branch location in Madison County that Plaintiffs never used, and (b) was excessive. But Plaintiffs cite to no authority to suggest how either of these facts relates to the pivotal Fourth Amendment question of whether the State had probable cause to issue a warrant and freeze the BBVA account. Because "[t]he reasonableness of a seizure or arrest under the Fourth Amendment turns on the presence or absence of probable cause," *Case v. Eslinger*, 555 F.3d 1317, 1326 (11th Cir. 2009) (citation omitted), the presence of probable cause precludes a Fourth Amendment claim.

But Plaintiffs do not contest the issue of probable cause; instead, they first argue that "[i]n every other county in which the Attorney General has seized property in a gambling

forfeiture action, the property seized was located in the county where the seizure took place." (Doc. 51 at 8.) This contention is mere tautology. As a general proposition, a seizure of property necessarily occurs where the property exists, else the seizor would have nothing to seize. But even beyond this argument's facial invalidity, Plaintiffs fail to explain how the State's seizure of Plaintiffs' account from BBVA's Madison County branch demonstrates a lack of probable cause.

Plaintiffs' other argument, that the "seizure of an amount higher than the maximum criminal fine is unconstitutionally unreasonable," also lacks merit. (Doc. 51 at 11). Plaintiffs attempt to bolster their argument by citing extensively to *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699 (1965). But the Supreme Court in *One 1958 Plymouth* only held that the Fourth Amendment's exclusionary rule of evidence applies equally to both criminal and forfeiture proceedings, not that a government entity cannot seize property worth more than a fine associated with a defendant's underlying criminal conduct. *Id.* at 696.

In *One 1958 Plymouth*, the Commonwealth of Pennsylvania arrested a man for smuggling 31 cases of untaxed liquor across state lines; then, as provided by Commonwealth law, the government permanently seized both the cases and the car that conveyed them. Although the trial court held that the arresting officers lacked probable cause to search the car in the first place, the Pennsylvania Supreme Court on appeal held that the officers did not need probable cause to seize the vehicle. *Id.* at 695. Although the United States Supreme Court noted as an aside that the vehicle was worth more than the maximum penalty associated with the smuggling offense, the Court's point was to highlight the need for probable cause whenever a government entity seizes anything of value. *Id.* at 701. The Court concluded that, on remand, the Pennsylvania court should determine whether the Commonwealth had probable cause to search the vehicle. *Id.* at 702.

Here, by contrast, Plaintiffs have not even argued that the State lacked probable cause to seize the BBVA account. Nor *could* Plaintiffs reasonably argue that the State lacked probable cause. Officer Perkins's affidavit supporting the seizure warrant reveals a thorough, step-by-step description of how $15,500 of "revenue share" from an illegal gambling facility operated by Brighton Ventures in Jefferson County wound up in Plaintiffs' BBVA bank account. (Doc. 53-2 at 3–7.) The court makes no determination about whether the $15,500 that Brighton Ventures paid to Plaintiffs constitutes the fruit of illegal gambling activity—an issue currently pending before the Circuit Court of Madison County. But the court *does* find that the State had probable cause to seize Plaintiffs' BBVA account. For this reason, Plaintiffs' Fourth Amendment claim fails as a matter of law, and the court WILL DISMISS Plaintiffs' Count II.

**Conclusion**

Because Attorney General Marshall is entitled to qualified immunity regarding both the Eighth Amendment and Fourth Amendment claims against him, the court WILL GRANT his motion to dismiss (Doc. 52) and DISMISS the case with prejudice. The court will enter a separate order accompanying this memorandum opinion.

**DONE** and **ORDERED** this 28th day of May, 2020.

_____
**KARON OWEN BOWDRE**
UNITED STATES DISTRICT JUDGE